DECISION. *Page 2 
{¶ 1} Shortly after his former wife, Ilanit Daniel, gained residential custody of their son, Tommy, John Daniel moved for a modification of his child-support payment. The trial court held that John was voluntarily underemployed and imputed to him a salary higher than what he was currently earning. The court allowed Ilanit to claim Tommy for tax purposes. (We use first names as the parties have the same last name.)
 {¶ 2} In his brief to this court, John asserts that the trial court increased his monthly child-support payment. Not so. The trial court reduced — not increased — his payment from $725 to $568 per month. John had sought to pay only the paltry sum of $141 per month.
 {¶ 3} The trial court did not abuse its discretion, and we affirm its judgment.
 I. A Bitter Divorce {¶ 4} John and Ilanit were married in Las Vegas in December 1997. Tommy was born on Halloween 1998. The couple separated in July 1999. A divorce decree was issued in May 2002. A shared-parenting decree, granting both parents 50% custody of Tommy, was also entered in May 2002.
 {¶ 5} Tommy was eight months old when his parents separated. He will be nine years old this year. For nearly his whole life, his parents have displayed bitter animosity toward one another. The following are just a few examples.
 {¶ 6} John made unfounded allegations that Ilanit had sexually abused Tommy. John failed a polygraph test about the allegations.
 {¶ 7} Both parties called police over disputes concerning when Tommy was to be turned over to the other parent. John once showed up with police and a video camera, demanding that Ilanit follow the parenting plan. *Page 3 
 {¶ 8} Ilanit took Tommy to Israel in 2003, with the permission of the court. John lied to authorities and reported that Tommy's passport had been stolen, causing Ilanit to be interrogated by customs agents when she and Tommy attempted to reenter the United States.
 {¶ 9} Numerous contempt motions were filed by both parties concerning child-support payments, parenting time, and division of assets.
 {¶ 10} Parenting time was a source of great contention for the Daniels — it frequently changed, according to John's wishes and work schedule. John would create custody calendars according to his availability and change them without notice to Ilanit.
 {¶ 11} In June 2005, the court determined that 50% custody to each parent was not working. It designated Ilanit as the legal custodian and residential parent of Tommy. The court granted John visitation every other weekend, every Wednesday, on certain holidays, and for four additional weeks during Tommy's school breaks. John did not appeal the custody decision.
 II. Child Support {¶ 12} Ilanit is a native of Israel. She does not have a college education. Her English skills are limited — English is not her first language. Ilanit began working full-time at Macy's in May 2002. At the time of the trial, Ilanit still worked at Macy's and earned less than $10 per hour.
 {¶ 13} John had been in the United States Navy, where he was trained in monitoring radioactive material. John had worked in the field of radiation monitoring, mostly in safety, since 1981. John had worked for Fernald, a uranium-processing facility, for ten years, earning $50,000 to $60,000 per year. *Page 4 
 {¶ 14} John was laid off from Fernald in February 2005. John lived off of unemployment benefits and his girlfriend for over nine months, and then he landed a job sweeping floors and answering phones for a sign company.
 {¶ 15} John made $10 per hour at the sign company. Despite the huge decrease in salary, and his previous experience and training in an area where he could have made much more money, he testified that, between his layoff and the beginning of the trial, he did not seek any other employment.
 {¶ 16} In October 2005 — four months after losing shared custody of Tommy-John asked the court to reduce his child-support payment. The divorce decree had set John's monthly payment at $968.25. The court had reduced his payment in April 2004 to $725.74. In his motion, John asked the court to reduce the amount to $141.38 per month.
 {¶ 17} At trial, in May and June 2006, John testified that his girlfriend paid about 65% of his portion of the household expenses. After he had been laid off by Fernald, he had been on, or was planning to take, several vacations: Disneyland, Jamaica, Brookville, Arkansas, Virginia Beach, Washington D.C., and Arkansas or Missouri. He had allowed Tommy's health insurance to lapse. He testified that he would rather have his girlfriend or his father pay his bills than work more than 40 hours per week. At the time of trial, he was $4,929.06 behind in child-support payments.
 {¶ 18} An expert witness testified that although many nuclear plants were closing, John's skills would transfer to other areas. He determined that, based on John's experience, his personality, and the results of an aptitude test, John had the capacity to earn approximately $54,000 per year — significantly higher than the $20,000 he could earn at his $10-an-hour job. *Page 5 
 {¶ 19} Before trial, John had made no effort to apply for other jobs. But after the expert testified, John applied for two sales jobs "just to prove that there's not a snowball's chance in hell" that he would be hired.
 {¶ 20} In sum, John had 25 years of work experience, plus military training. He had applied for no jobs other than his $10-an-hour job before the trial. During the trial, after an expert testified that he was voluntarily underemployed, John applied for two jobs just to show that he could not get hired.
 {¶ 21} The court found that John was voluntarily underemployed and was capable of earning $35,000 per year. The court determined that the child-support worksheet amount was inappropriate, based on disparities in income, relative financial resources, the parties' needs, and the benefits received by John from sharing his living expenses with his girlfriend. The court reduced John's monthly child-support payment to $568 and allowed Ilanit to claim Tommy for tax purposes.
 III. Assignments of Error {¶ 22} John asserts three assignments of error, claiming that the trial court erred by (1) imputing a higher level of income than John was actually earning; (2) allowing a deviation from the child-support worksheet and not providing findings of fact; and (3) allowing Ilanit to claim Tommy for tax purposes.
 Imputing Income {¶ 23} John contends that the trial court's imputation of a higher income was unsupported by any evidence. Not so.
 {¶ 24} Whether John was intentionally underemployed was a question of fact for the trial court, and we review the court's decision under an abuse-of-discretion *Page 6 
standard.[1] John's potential income was determined by such factors as his employment potential, work history, qualifications, and job opportunities.
 {¶ 25} The trial court had ample evidence to find that John could obtain a job paying $35,000. In fact, the trial court could have imputed a much higher salary.
 {¶ 26} An expert testified that John's skills would transfer to other positions. John did not provide his own expert to testify to the contrary. John had been working in the radiation field for 25 years. John had been trained both on-the-job and by the Navy. John was capable of making more than $10 an hour.
 {¶ 27} But most damning to John was his complete lack of effort to find a job within his field and previous salary range. He applied for no other positions until after Ilanit's attorney had questioned him on his efforts to find something more appropriate. Even then, he testified that he had applied for two jobs for the sole purpose of proving that he did not have "a snowball's chance in hell" of getting hired.
 {¶ 28} John testified that living off his girlfriend was preferable to working more than 40 hours per week. But if John does not find a higher-paying position, he will have to do just that. His vacation schedule clearly showed he had disposable income. He will have to either find a better job or work more hours to pay for his son's care.
 {¶ 29} The trial court was well within its discretion in imputing a $35,000 income to John. Its determination of $568 per month for child support stands. John's first assignment of error is overruled.
 Deviations from the Child-Support Worksheet {¶ 30} John argues that the trial court deviated from the child-support worksheet without including findings of fact to support the deviation. *Page 7 
 {¶ 31} Decisions about child support are generally within the trial court's discretion.[2] The amount of child support a parent must pay is based on the child-support worksheet provided by statute.[3]
Deviations from the worksheet are allowed if the court finds that the worksheet amount would be unjust and not in the best interest of the child. The court must include findings of fact to support its determination.[4]
 {¶ 32} The trial did not abuse its discretion by increasing John's child-support payments by $2,000 per year over the worksheet amount. The court made findings of fact: it found that John was capable of earning $35,000 a year. The court also considered the disparity in the household incomes of Ilanit and John and Ilanit's greater financial needs.
 {¶ 33} John's second assignment of error is overruled.
 Claiming Tommy for Tax Purposes {¶ 34} With respect to the trial court's tax determination, John argues that the trial court was required to make findings regarding such factors as the parents' income, exemptions and deductions the parents were entitled to, and more.
 {¶ 35} R.C. 3119.82 allows courts to permit a nonresidential parent to claim children for tax purposes "only if the court determines that this furthers the best interest of the children * * *."
 {¶ 36} Ilanit is the residential parent. The trial court could only allow John — the nonresidential parent — to claim Tommy for tax purposes if it determined that this would further Tommy's best interests. No findings were necessary to permit Ilanit to claim Tommy for tax purposes, and there is no evidence in the record that giving John a *Page 8 
tax exemption would have furthered Tommy's best interests. John's third assignment of error is overruled.
 {¶ 37} For the foregoing reasons, we hold that the trial court committed no error and affirm its judgment.
Judgment affirmed.
HILDEBRANDT and HENDON, JJ., concur.
[1] Rock v. Cabral (1993), 67 Ohio St.3d 108, 112,616 N.E.2d 218.
[2] Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028.
[3] R.C. 3119.02; R.C. 3119.022.
[4] R.C. 3119.22; R.C. 3119.23. *Page 1